# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LENA HARDAWAY,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 14-1273 (RJL)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | **FILED** |
| | ) | AUG 3 1 2015 |
| **Defendants.** | ) | |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(August **28**, 2015) [Dkt. #9]

Plaintiffs Lena and Angelene Hardaway ("plaintiffs") bring this action against the District of Columbia ("defendant")[1] for alleged violations of 42 U.S.C. §§ 1983, 1985(3), and 1986 and the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12131 *et seq.*, arising from an encounter with a Metropolitan Police Department officer on June 18, 2013. *See generally* Compl. [Dkt. #1]. Presently before the Court is the defendant's Motion to Dismiss [Dkt. #9]. Upon review of the parties' pleadings, the relevant law, and the entire record herein, defendant's motion will be GRANTED and this case will be DISMISSED.

---

[1] In the caption of the Complaint, plaintiffs name Cathy Lanier, the Chief of the Metropolitan Police Department, and Vincent Gray, former Mayor of the District of Columbia, in their official capacities, as parties to this action. Although plaintiffs purport to sue these defendants in their individual capacities as well, *see* Compl. ¶ 13, the Complaint alleges no facts to indicate their personal involvement in the events giving rise to the Complaint. Nor can these defendants be held liable for a violation of Title II of the ADA. *See Alston v. District of Columbia,* 561 F. Supp. 2d 29, 37 (D.D.C. 2008). Accordingly, the Court will dismiss Chief Lanier and former Mayor Gray as parties to this action, and will treat the Complaint as if it names the District of Columbia as the sole defendant.

## BACKGROUND

Plaintiffs allege that, on June 25, 2013, they moved into an apartment at 3232 Georgia Avenue, N.W., Unit 605, in Washington, D.C. Compl. ¶ 8. One week earlier, on June 18, 2013, when "[p]laintiffs had legal possession of unit 605[,] the leasing agent . . . illegally, negligently [and] forcibly [tried] to evict [them] from their apartment *without* a court order." Compl. ¶ 8. (emphasis in original). Specifically, plaintiffs contend that the leasing agent tried "to force Angelene Hardaway . . . to sign another contract without her lawyer or her disability aide reviewing the contract," and in the process, the leasing agent "physically block[ed] [p]laintiffs['] access to the apartment[] and the loading dock." Compl. ¶ 8.

In Lena Hardaway's view, the leasing agent "was trying to take advantage of Angelene['s] disability[] by *physically* forcing [her] to sign another contract," and when she saw this, Lena "called 911." Compl. ¶ 8 (emphasis in original). Thereafter, a white male police officer arrived on the scene. Compl. ¶ 8. According to plaintiffs, the officer allegedly refused to identify himself, to speak with the leasing agent, or to otherwise assist plaintiffs, both because plaintiffs were black women and because Angelene Hardaway is disabled. *See* Compl. ¶¶ 8-11. Plaintiffs assert that the officer "had a duty to identify himself, take action, and file an incident report," Complaint ¶ 19, and to "assist any victim [of an] illegal eviction," *id.* ¶ 16. According to plaintiffs, the police officer, in failing to take such action, acted pursuant to municipal policies that deprived them of equal protection of the laws and of the privileges and immunities of citizenship

conferred by the Constitution. *See* Compl. ¶¶ 13-14, 21-24, 29, 31. Plaintiffs now

demand injunctive relief and compensatory and punitive damages. Compl. ¶ 36.

## DISCUSSION

Defendant makes two overarching arguments in its Motion to Dismiss. It first

alleges that plaintiff Lena Hardaway lacks standing to pursue her claim. Second, it

argues that plaintiffs fail to state a claim on which relief may be granted. For the reasons

discussed herein, the Court finds that as to the first argument, plaintiff Lena Hardaway

does in fact have standing to pursue her claims. Unfortunately for plaintiffs, however,

the Court agrees with defendant's second argument and concludes that both plaintiffs

have failed to state claims on which relief may be granted. The Court addresses each

issue in turn, beginning with standing.

### I.    Standing

Defendant first argues that "Lena Hardaway lacks Article III standing." Mem. in

Support of D.C. Defs.' Mot. to Dismiss ("Defs.' Mem.") at 3 [Dkt. #9-1]. Because a

motion to dismiss for lack of standing is considered a challenge to the Court's subject

matter jurisdiction, the Court considers defendant's Motion as a motion for dismissal

pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Haase v. Sessions*, 835 F.2d

902, 906 (D.C. Cir. 1987).

"Federal courts are courts of limited jurisdiction," having "only that power

authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies

outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon

3

the party asserting jurisdiction[.]" *Id.* (citations omitted). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are: "(1) a concrete and particularized injury in fact that is (2) fairly traceable to the defendant's alleged unlawful conduct and (3) likely to be redressed by a favorable decision." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 619 (2007) (citing *Lujan*, 504 U.S. at 560-61) (internal quotation marks omitted).

Although the Complaint avers that "Angelene Hardaway suffered injury," defendant argues that the Complaint "does not allege any injury against . . . Lena Hardaway, who, according to the complaint, assisted . . . Angelene Hardaway by calling 911 and speaking with the officer." Defs.' Mem. at 4. Because Lena Hardaway "does not allege any personal injury," defendant contends she "lacks standing and cannot maintain this suit." *Id.* I disagree. I disagree. Lena Hardaway, who conversed with the police, and who claims to have been harmed by the officer's discriminatory conduct, was equally aggrieved by the police officer's alleged misdeeds. *See* Compl. ¶ 10. Thus, she, like Angelene Hardaway, suffered alleged violations of her Constitutional rights that are fairly traceable to defendant's actions and, which, moreover possess legal remedies. *See* Compl. ¶ 11. There is little question that this meets the threshold for Article III standing. *See Hein*, 551 U.S. at 619. "The party invoking federal jurisdiction bears the burden of establishing [the] elements" of standing, *Lujan*, 504 U.S. at 561, and I find, for the reasons discussed above, that plaintiff Lena Hardaway manages to do so here. Defendant's Motion to dismiss for lack of standing is therefore DENIED.

4

## II.   Dismissal Under Rule 12(b)(6)

I turn next to defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state claims upon which relief can be granted. *See generally* Defs.' Mem. at 2-3.

Although plaintiffs need not set forth "detailed factual allegations" to withstand a Rule 12(b)(6) motion, in order to survive a challenge of this nature, plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court, in reviewing a motion to dismiss, "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The complaint "is construed liberally in [plaintiffs'] favor, and [the Court should] grant [plaintiffs] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court, as such, need not accept inferences that are not supported by the facts alleged and legal conclusions drawn by plaintiff. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although pro se plaintiffs are held to "less stringent [pleading] standards" than those governing lawyers, *Erickson*, 551 U.S. at 94, that does not obviate their duty to plead facts permitting an inference of "more than the mere possibility of misconduct," *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82

(D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see Brown v. Whole Foods Market Grp., Inc.*, 789 F. 3d 146, 150 (D.C. Cir. 2015).

## A. Equal Protection

The Court first addresses plaintiffs' assertion that defendant violated the equal protection clause of the Fifth Amendment. Defendant argues that "plaintiffs have not presented any allegations, other than that they are African-American and the officer who responded was white, to make out an equal protection claim." Defs.' Mem. at 4. According to defendant, they neither "discuss similarly situated individuals, . . . [n]or . . . allege any facts showing discriminatory purpose." *Id*. at 4-5. I agree.

The equal protection clause requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on their claim, plaintiffs must point to a quantum of dissimilar treatment afforded to otherwise identically-situated individuals. This, they have not done. Plaintiffs here assert that the police officer "would [have] stop[ped] the illegal eviction and enforce[d] tenant rights if [they] were White," but opted instead to "violate[] their right to equal protection by providing them inadequate police protection based on their status as a disable[d] woman and African American." Compl. ¶ 11. Altogether missing from plaintiffs' Complaint, however, are factual allegations that this purported conduct violates equal protection. Plaintiffs' Complaint fails, for example, to identify affirmative "rights" of which they were deprived. Nor, as a practical matter, could plaintiffs identify any such rights, given that the District of Columbia is "under no general duty to provide public services, such as police protection, to any particular individual citizen." *Warren v.*

6

*District of Columbia*, 444 A.2d 1, 4 (D.C. 1981) (en banc).  More importantly, plaintiffs'

Complaint fails to allege any similarly situated individual or individuals to whom these

supposed rights were afforded.  In the absence of such allegations, plaintiffs simply have

not articulated a claim on which relief may be granted.  *See Mpras v. District of*

*Columbia*, 74 F. Supp. 3d 265, 271-72 (D.D.C. 2014) (dismissing plaintiff's equal

protection claim in light of plaintiff's failure to "allege any facts . . . about who these

other persons are or how they were similarly situated").  In sum, plaintiffs have failed to

marshal sufficient facts to satisfy their burden.  *See BEG Inv., LLC v. Alberti*, __ F. Supp.

3d __, 2015 WL 1324416, at *12 (D.D.C. Mar. 24, 2015) (dismissing plaintiff's case

where plaintiff's complaint lacked "adequate factual allegations to make its conclusory

assertions of discrimination plausible rather than merely possible").  For this reason, the

Court finds that plaintiffs have failed to state a claim under the equal protection Clause

for which relief may be granted.

### B. Privileges and Immunities of Citizenship

Plaintiffs next argue that defendant violated the Privileges and Immunities Clause

of the Fourteenth Amendment.  This contention fails to pass muster as a matter of law.

The Privileges and Immunities Clause is set forth in the Fourteenth Amendment of the

United States Constitution.  *See* U.S. Const., art. IV, § 2.  Unfortunately for plaintiffs, the

Fourteenth Amendment applies only to states and not, as plaintiffs have alleged, to the

District of Columbia.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Furthermore, the

Fourteenth Amendment's privileges and immunities clause pertains *only* to one state's

discrimination against residents of another state, which is plainly not the case here.

7

Indeed, plaintiffs here only allege violations by the District of Columbia against its own

residents. *See United Bldg. & Constr. Trades Council of Camden Cnty. & Vicinity v.*

*Mayor and Council of the City of Camden*, 465 U.S. 208, 215-16 (1984) ("The Clause is

phrased in terms of *state* citizenship and was designed to place the citizens of each State

upon the same footing with citizens of other States, so far as the advantages resulting

from citizenship in those States are concerned." (citation and internal quotation marks

omitted)).

Even if plaintiffs had adequately alleged constitutional violations—which they did

not—the analysis is not complete.  Rather, because defendant is a municipality, the

ordinary rules of *respondeat superior* do not apply.  *See Baker v. District of*

*Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *Runnymede-Piper v. District of*

*Columbia*, 952 F. Supp. 2d 52, 56 (D.D.C. 2013) ("It is well-established that a

municipality cannot be held responsible for [its] agents' constitutional torts under

a *respondeat superior* theory, because the doctrine of *respondeat superior* liability does

not apply to [§] 1983 claims."  (citation omitted)).  The District of Columbia can be held

liable under 42 U.S.C. § 1983 only if it "is itself responsible for an unconstitutional

deprivation of rights."  *Atchinson v. District of Columbia*, 73 F.3d 418, 420 (D.C. Cir.

1996) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-

91 (1978)).  In other words, "a municipality can be liable under § 1983 only where its

policies are the moving force behind the constitutional violation."  *City of Canton v.*

*Harris*, 489 U.S. 378, 389 (1989) (citations, brackets and internal quotation marks

omitted); *see Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir.

8

2004) ("[M]unicipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom.").

Plaintiffs have not alleged any such policies or procedures. They rely instead on rote assertions that they "are not required to plead anything more than they have already pleaded in the complaint." Pls.' Opp'n to Defs.' Mot. to Dismiss and Summ. J. ("Pl.'s Opp'n") at 5 [Dkt. #11]. As evidence of this belief, they repeat the conclusory allegation that the officer "failed to file a police report or act to protect both plaintiff[s'] rights" because of the "color of [their] skin, sex and/or disability." *Id.* This simply does not suffice. They fail, moreover, to identify any municipal custom or practice, the application of which violated plaintiffs' constitutional rights.

In sum, the Court has reviewed plaintiffs' opposition to defendant's motion, and has searched in vain for any non-conclusory allegation of a violation of a constitutionally-protected right. Having found no such allegations, the Court dismisses plaintiffs' claims under the privileges and immunities clause.

### C.  Claims Under 42 U.S.C. §§ 1985(3) and 1986

Plaintiffs also claim that defendant violated 42 U.S.C. § 1985(3), which provides a cause of action "against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus." *Atherton*, 567 F.3d at 688; *see Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971) (concluding that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" and the "conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all"). Unfortunately for plaintiffs, this claim

9

fails.  To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *Atherton*, 567 F.3d at 688 (citing *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987) (alteration in original)).

Missing from plaintiffs' Complaint are any allegations to support their theory that a conspiracy existed or that the conspiracy was aimed at a particular race or class of persons.  Nor, for that matter, do plaintiffs identify the participants in the conspiracy.  Indeed, the only individuals purportedly involved are the former Mayor and the Chief of Police.  However, as agents of the District of Columbia, they exist as a single unit, and cannot, as a practical matter, enter into a conspiracy, which requires two participants at a minimum.  *See, e.g.*, *Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 109 (D.D.C. 2010) ("[T]here can be no conspiracy if the conduct complained of is essentially a single act by a single entity." (quoting *Gladden v. Barry*, 558 F. Supp. 676, 679 (D.D.C. 1983)).

Plaintiffs fare no better with regard to their claim under 42 U.S.C. § 1986, through which they might have had a cause of action against a person who knowingly fails to prevent a conspiracy under § 1985.  *See Bush v. Butler*, 521 F. Supp. 2d 63, 70 (D.D.C. 2007).  Without a predicate violation of § 1985, however, their claim under § 1986 fails.  *See, e.g.*, *Jackson v. Donovan*, 856 F. Supp. 2d 147, 150 (D.D.C. 2012) (stating that there

10

can be no liability under § 1986 without liability for the predicate offense under §
1985(3)).

### D. Angelene Hardaway's ADA Claim

This brings the Court to plaintiff Angelene Hardaway's ADA Claim which, like

plaintiffs' prior allegations, fails to meet the Rule 12(b)(6) threshold.  Generally, Title II

of the ADA provides that a qualified individual cannot be deprived of the services,

programs or activities of a local government because of her disability. *See Alston v.*

*District of Columbia*, 561 F. Supp. 2d 29, 37 (D.D.C. 2008).  "The elements of an ADA

discrimination claim are 1) that the plaintiff is a qualified individual with a disability; 2)

that the public entity denied her the benefits of or prohibited her from participating in the

entity's services, programs or activities; and 3) that denial or prohibition was 'by reason

of' her disability."  *Id.* (citing 42 U.S.C. § 12132).  Defendant moves to dismiss Angelene

Hardaway's ADA claim because she "fails to make [a] prima facie showing" by alleging

"that the District denied her the benefits of its services."  Defs.' Mem. at 11.

Specifically, defendant submits that a police officer responded to plaintiffs' 911 call, and

that any "disagreement [plaintiff] may have had with the officer's alleged refusal to stop

an allegedly illegal eviction attempt and to file a police report is beside the point."  *Id.*

Plaintiffs, however, make no mention of plaintiff Angelene Hardaway's ADA claim in

their opposition to defendant's Motion, and thereby concede defendant's arguments for

dismissal of the ADA claim.  *See, e.g., Burnett v. Sharma*, 511 F. Supp. 2d 136, 145-46

(D.D.C. 2007) ("[I]f 'a plaintiff files an opposition to a dispositive motion and addresses

only certain arguments raised by the defendant, a court may treat those arguments that the

11

plaintiff failed to address as conceded.'") (quoting *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003)).  Accordingly, the Court finds that plaintiff Angelene Hardaway's ADA claim fails.

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs' complaint fails to state a claim upon which relief can be granted and, accordingly, GRANTS defendant's Motion to Dismiss and DISMISSES the case.  An Order is issued separately.

RICHARD J. LEON
United States District Judge